UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SETON COMPANY,

       Plaintiff,                                         Case No. 02-71118

v.                                                      Honorable Patrick J. Duggan

LEAR CORPORATION,

       Defendant.
_____/

**OPINION AND ORDER DENYING LEAR CORPORATION'S MOTION TO STRIKE SETON COMPANY'S TARDY EXPERT DISCLOSURE**

At a session of said Court, held in the U.S.
District Courthouse, Eastern District of
Michigan, on MAY 13, 2005.

PRESENT:   THE HONORABLE PATRICK J. DUGGAN
                     U.S. DISTRICT COURT JUDGE

Plaintiff Seton Company ("Seton") brought this lawsuit against Defendant Lear Corporation ("Lear") alleging that Lear breached a contract to buy leather from Seton for seats Lear manufactured for General Motors Corporation ("GM"). The contract related to seats for an upcoming GM vehicle platform called the "GMT 800 Program." Seton alleges that it suffered substantial damages as a result of Lear's breach and it has designated Dr. George Eads as its damages expert. Presently before the Court is Lear's motion to strike Dr. Eads' second expert report that Seton submitted to Lear on February 16, 2005.

1

On September 3, 2004, this Court issued an Amended Scheduling Order setting September 22, 2004, as the deadline for Seton to submit its expert disclosures pursuant to Rule 26 of the Federal Rules of Civil Procedure. On September 22, Seton served Lear with Dr. Eads' first expert report ("initial report"). Lear has not alleged that Dr. Eads' initial report failed to comply with the requirements set forth in Rule 26.

In his initial report, Dr. Eads calculated Seton's lost profits as a result of Lear's alleged wrongful conduct in the amount of $73.8 million. *See* Lear's Mot. Ex. 5 at 3. As part of this calculation, Dr. Eads calculated the volume of leather that Seton would have sold Lear from mid-2002 (when Seton ceased being Lear's exclusive supplier of leather for the GMT 800 Program) to 2007 (the projected end of the Program). *See id.* at 5. To calculate this figure, Dr. Eads relied on data from CSM Worldwide. *See id.* at 7. Dr. Eads then used a methodology set forth in his initial report to calculate Seton's lost profits on each square foot of leather used in the GMT 800 Program. *See id.* at 9-16. In his initial report, Dr. Eads "reserve[d] the right to supplement [his] report if additional relevant information [became] available." *See id.* at 3.

Lear deposed Dr. Eads on October 21, 2004. At his deposition, Dr. Eads acknowledged that one other source of data was available to him to estimate the volume of leather that Seton would have sold Lear– that being Ward's Automotive Reports, published by Ward's communications ("Wards"). *See* Lear's Mot. Ex. 6 at 121-22. While Dr. Eads used Wards' 2003 and 2004 Automotive Yearbooks for some of his data, he testified that he otherwise found Wards' data insufficient. *See id.* Dr. Eads further

testified that he believed some of the figures he used to project leather usage for the GMT 800 Program were lower than actual usage, thus resulting in Seton's lost profits appearing smaller than they actually were. *See id.*; Seton's Resp. Ex. 4 at 48. Dr. Eads anticipated that he would be able to adjust his damages estimate when better data became available. *See* Seton's Resp. Ex. 4 at 48.

On October 22, 2004, Lear served Seton with the report prepared by its damages expert, Martha Corbett. On November 9, 2004, Seton deposed Ms. Corbett. Pursuant to the Court's Amended Scheduling Order, discovery in this case closed on November 1, 2004.

In mid-January 2005, Wards published preliminary production data for the GMT 800 Program for the full year of 2004 in *Automotive News*. *See* Lear's Mot. Ex. 1 ¶ 1. According to Dr. Eads, this data failed to provide sufficient detail on GM's Mexican truck production to permit him to determine the production amount for two GM models. *See id.* n.2. Dr. Eads therefore requested and obtained a special tabulation from Wards on February 11, 2005. *See id.* ¶ 1. After reviewing this special tabulation, Dr. Eads concluded that, in addition to providing one more year of actual data on production and leather seating percentages, the 2004 data in combination with data for 2002 and 2003 permitted him to more accurately calculate the percentage of GM vehicles equipped with Seton leather for those two earlier years. *See id.* The data also permitted Dr. Eads to calculate what he believes to be a more accurate and consistent estimate of the percentage of vehicles in GM's Yukon and Yukon XL line for which Seton would have supplied the

3

leather.[1]  *See id.*

Using these new figures, Dr. Eads calculated Seton's lost profits by employing the same methodology he used in his initial report.  Dr. Eads then prepared a "Supplemental Expert Report" ("second report") describing the new data upon which he relied and providing revised versions of 7 of the 19 tables included in his initial report to reflect his calculations.  *See id.*  In his second report, Dr. Eads increased Seton's lost profits due to Lear's alleged breach of the parties' contract from $73.8 million to $96.5 million.  *See id.* ¶ 3.  Seton served Lear with Dr. Eads' second report on February 16, 2005.

Lear filed the pending motion on March 11, 2005, seeking to strike Dr. Eads' second report pursuant to Rule 37(c)(1) of the Federal Rules of Civil Procedure.  Lear argues that although labeled a "supplemental" report, Dr. Eads' second report in fact constitutes a rebuttal report untimely filed pursuant to Rule 26(a)(2)(C).  Rule 26(a)(2)(C) provides that evidence "intended solely to contradict or rebut evidence on the same subject matter identified by another party under paragraph (2)(B)" must be filed within 30 days after the disclosure is made by the other party.

Lear contends that as a result of Seton's untimely submission of Dr. Eads' second report, Rule 37(c)(1) requires the Court to preclude Seton from introducing the evidence contained therein at trial.  Rule 37(c)(1) provides:

---

[1]GM's Yukon line included the Denali model for which Seton did not provide the leather.  Dr. Eads did not believe that the earlier data upon which he relied accurately reflected the percentage of Denali vehicles in the line.  *See* Lear's Mot. Ex. 1 ¶ 2.

4

> A party that without substantial justification fails to disclose
> information required by Rule 26(a) or 26(e)(1), or to amend a
> prior response to discovery as required by Rule 26(e)(2), is
> not, unless such failure is harmless, permitted to use as
> evidence at a trial, at a hearing, or on a motion any witness or
> information not so disclosed.

FED. R. CIV. P. 37(c)(1). Lear maintains that Seton's untimeliness was without justification and is not harmless.

Seton argues, however, that Dr. Eads second report was not a rebuttal report, but rather a supplemental report filed pursuant to Rule 26(e). Rule 26(e) provides:

> A party is under a duty to supplement at appropriate intervals
> its disclosures under subdivision (a) if the party learns that in
> some material respect the information disclosed is incomplete
> or incorrect and if the additional or corrective information has
> not otherwise been made known to the other parties during the
> discovery process or in writing. With respect to testimony of
> an expert for whom a report is required under subdivision
> (a)(2)(B) the duty extends both to information contained in
> the report and to information provided through a deposition of
> the expert, and any additions or other changes to this
> information shall be disclosed by the time the party's
> disclosures under Rule 26(a)(3) are due.

FED. R. CIV. P. 26(e)(1). As Dr. Eads' second report was filed in order to correct his lost profits estimate based on information that was not available when he prepared his initial report, the Court finds that his second report constitutes "supplemental" evidence. The "lost profits" evidence was disclosed to Lear before Seton's Rule 26(a)(3) disclosures were due. As such, the Court concludes that it was timely filed.

As the district court explained in *Keener v. United States*, 181 F.R.D. 639, 640 (D. MT 1998), "[s]upplementation under the Rules means correcting inaccuracies, or filling

5

the interstices of an incomplete report based on information that was not available at the time of the initial disclosure." As Dr. Eads recognized in his initial report, some of the figures on which he relied to calculate leather usage for the GMT 800 Program were lower than actual usage. He further indicated that he would be able to make a more accurate lost profits determination when better data become available. According to Dr. Eads, the actual production figures for 2004 provided him with more accurate numbers.

The Court does not believe that Dr. Eads' second report– which consists of four brief paragraphs covering less than two pages– constitutes a rebuttal report. In this report, Dr. Eads does not respond to Ms. Corbett's lost profits analysis or seek to alter his methodology in response to Ms. Corbett's criticisms of his initial report. Unlike the plaintiff in *Vance v. United States*, No. 98-5488, 1999 WL 455435 (6th Cir. June 25, 1999)(unpublished opinion)– a case Lear relies upon heavily– Dr. Eads' second report is not an attempt to add or supplement information required under Rule 26(a) that previously was not provided or was insufficient.

But even if the Court were to find that Dr. Eads' second report constitutes a rebuttal report, the Court concludes that Lear is not prejudiced by Seton's untimely filing as Seton has offered to make Dr. Eads available for deposition immediately. *See* Seton's Resp. Ex. 7. Lear has accepted Seton's offer, stating that it will "try to develop exhibits in response to [Dr.] Ead's [sic] new report after deposing him on the report." *See id.* Ex. 6.

Accordingly,

**IT IS ORDERED**, that Lear Corporation's Motion to Strike Seton Company's Tardy Expert Disclosure is **DENIED**.

s/PATRICK J. DUGGAN  
PATRICK J. DUGGAN  
UNITED STATES DISTRICT JUDGE

Copies to:
Robert L. Begleiter, Esq.
Lyle D. Russell, Esq.
Thomas J. Wiegand, Esq.
Thomas J. Tallerico, Esq.
Phyllis Golden Morey, Esq.