UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SETON COMPANY,

    Plaintiff,

v.                                                   Case No. 02-71118

LEAR CORPORATION,                     Honorable Patrick J. Duggan

    Defendant.
                                          /

**OPINION AND ORDER DENYING LEAR'S MOTION *IN LIMINE* TO PROHIBIT SETON FROM INTRODUCING ANY EVIDENCE OF ITS PURPORTED DAMAGES BASED ON THE TESTIMONY OR ANALYSIS OF GEORGE EADS**

At a session of said Court, held in the U.S.
District Courthouse, Eastern District of
Michigan on MAY 16, 2005.

PRESENT:   THE HONORABLE PATRICK J. DUGGAN
                  U.S. DISTRICT COURT JUDGE

This lawsuit arises from an alleged contract between Plaintiff Seton Company ("Seton") and Defendant Lear Corporation ("Lear"), pursuant to which Lear agreed to buy leather from Seton for seats Lear manufactured for General Motors Corporation ("GM"). Seton has retained George Eads as its expert with respect to damages. Presently before the Court is Lear's Motion *In Limine* to Prohibit Seton from Introducing Any Evidence of Its Purported Damages Based on the Testimony or Analysis of George Eads. In support of its motion, Lear contends that Mr. Eads' damages analysis fails the standard for expert testimony set forth by the Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786 (1993). Lear further argues that

1

Mr. Eads' analysis is improperly speculative and that his damages are so inflated there is a danger that his conclusions will mislead the jury.

Federal Rules of Evidence 702 and 703 govern the admissibility of expert testimony in federal court. Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FED. R. EVID. 702. In *Daubert*, the Supreme Court held that Rule 702 requires a district court to act as a "gatekeeper" to guarantee that "any and all scientific evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589, 113 S. Ct. at 2795. However the Court recognized the " 'liberal thrust' of the Federal Rules and their 'general approach of relaxing the traditional barriers to opinion testimony.' " *Id.* at 588, 113 S. Ct. at 2794 (quoting *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 169, 109 S. Ct. 439, 450 1988)). The proponent of the expert testimony bears the burden of establishing its admissibility by a preponderance of the evidence. *Id.* at 592 n.10, 113 S. Ct. at 2796 n.10.

As the *Daubert* Court explained, Rule 702 requires district courts to ensure "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Id.* at 597, 113 S. Ct. at 2799. The *Daubert* Court also noted that the trial court's gatekeeping function does not replace the traditional adversary system and the place of the jury within the system. *Daubert*, 509 U.S. at 596, 113 S. Ct. at 2798. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but

admissible evidence." *Id.* (citing *Rock v. Arkansas*, 483 U.S. 44, 61, 107 S. Ct. 2704, 2714 (1987)). The Sixth Circuit and the Michigan courts therefore endorse a broad interpretation of Rule 702's requirements. *See, e.g., Morales v. Am. Honda Motor Co.*, 151 F.3d 500, 516 (6th Cir. 1998)(citing *Davis v. Combustion Eng'g, Inc.*, 742 F.2d 916 (6th Cir. 1984)); *Grow v. W.A. Thomas Co.*, 236 Mich. App. 696, 713, 601 N.W.2d 426, 435 (Mich. Ct. App. 1999)(citing *Dudek v. Popp*, 373 Mich. 300, 306, 129 N.W.2d 393 (1964))(finding that "[a]ny limitations on a proposed expert's qualifications are relevant to the weight, not the admissibility, of his testimony.")

According to Lear, Mr. Eads' analysis cannot withstand *Daubert* scrutiny and fails to comport with Michigan damages law for the following reasons:

> -Mr. Eads relies on Seton's "Gross Profit Reports," which Lear claims are not reliable sources of Seton's profitability;
>
> -Mr. Eads relies on Seton's "Quotation Matrix Sheets," which Lear claims were used only during the quotation process and do not reflect actual production;
>
> -Mr. Eads fails to account for Seton's alleged earned increased margins on other business after it lost the GMT 800 Program;
>
> -Mr. Eads' analysis is based upon numerous highly speculative assumptions;
>
> -Mr. Eads is not an accountant and therefore lacks the necessary qualifications to perform a damages analysis in this case;
>
> -As a result of the above, Mr. Eads has grossly inflated Seton's damages.

*See* Lear Mot. at 5. Only the second to last reason relates to Mr. Eads' qualifications to testify regarding the matters he intends to address. The remaining reasons attack the data and methods upon which Mr. Eads relied in calculating Seton's damages.

3

With respect to Mr. Eads' qualifications, Seton demonstrates that his background experience as an economist renders him qualified to testify regarding damages. Mr. Eads is an industrial economist with 35 years of professional experience. According to Seton, one of the most important tasks Mr. Eads performed as an industrial economist has been understanding the determinants of a firm's profitability and how it should be estimated.

Mr. Eads worked for eight years as Vice-President and Chief Economist at GM, where he generated long- and short-term volume forecasts by vehicle line. In this position, Mr. Eads also projected program profitability. Mr. Eads also worked as a Special Assistant in the Justice Department's Antitrust Division. In that position, he analyzed the impact of competition on firm profitability. While serving as a Member of President Carter's Council of Economic Advisers, Mr. Eads co-chaired a task force that analyzed the profitability prospects for the domestic automotive industry. Finally, he has been qualified as an expert with respect to lost profits or profitability in cases tried in numerous federal courts.

Seton likewise has demonstrated that the facts, data, and methodology upon which Mr. Eads relies are sufficiently reliable to pass through this Court's gatekeeping function. As Seton points out, Lear's own damages expert– Martha Corbett– acknowledged in her deposition that the data used by Mr. Eads came from reports that are used "pretty extensively" in the automobile industry and that suppliers found them to be a "fairly reliable measure of forecasting production." *See* Seton Resp. Ex. B at 181-82. With respect to the Quotation Matrix Sheets, it appears that Lear's criticism of Mr. Eads' reliance upon these documents (i.e. that the Quotation Matrix Sheets are inaccurate with respect to the amount of leather actually required in the production of

4

seats) merely reflects a difference of opinion between Mr. Eads and Ms. Corbett with respect to whether the amount of leather per seat has changed from when the documents were submitted.

Mr. Eads' alleged failure to account for Seton's increased margins on other business after Seton lost the GMT 800 Program does not render his methodologies unreliable; rather it creates a basis for Lear to challenge his analysis on cross-examination or through Ms. Corbett's testimony. The same is true with respect to Lear's claim that Mr. Eads makes several speculative assumptions. Such alleged deficiencies in Mr. Eads' analysis are relevant to the weight to be given his opinion, not the admissibility of his testimony. As to its weight, Lear certainly can attempt to show through cross-examination and presentation of contrary evidence that his analysis is entitled to little weight.

For these reasons, the Court concludes that Seton should be allowed to present Mr. Eads' testimony and analysis to support its claim of damages. Accordingly,

**IT IS ORDERED**, that Lear's Motion *In Limine* to Prohibit Seton from Introducing Any Evidence of Its Purported Damages Based on the Testimony or Analysis of George Eads is **DENIED**.

<u>s/PATRICK DUGGAN</u>
PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:
Robert L. Begleiter, Esq.
Lyle D. Russell, Esq.
Kimball R. Anderson, Esq.
Thomas J. Tallerico, Esq.
Phyllis Golden Morey, Esq.